R. David STENGEL, Commonwealth's Attorney, 30th Judicial District, et. al., Movant,

v.

KENTUCKY BAR ASSOCIATION, Respondent,

and

Richard Boling, Commonwealth's Attorney 3rd Judicial District, Movant,

v.

Kentucky Bar Association, Respondent,

and

Kentucky Medical Association, Movant,

v.

Kentucky Bar Association, Respondent,

and

Raymond M. Larson, Commonwealth's Attorney 22nd Judicial District, Movant,

v.

Kentucky Bar Association, Respondent,

and

Irv Maze, in his Official Capacity as Jefferson County Attorney, Movant,

v.

Kentucky Bar Association, Respondent,

and

George W. Moore, Commonwealth's Attorney 21st Judicial District, Movant,

v.

Kentucky Bar Association, Respondent,

and

Kenton R. Smith, Commonwealth's
Attorney 46th Judicial
District, Movant,

v.

Kentucky Bar Association, Respondent,

and

Roy K. Snell, Commonwealth's
Attorney 12th Judicial
District, Movant,

v.

Kentucky Bar Association, Respondent,

and

Barry Bertram, Commonwealth's
Attorney 11th Judicial
District, Movant,

v.

Kentucky Bar Association, Respondent.

No. 2004–SC–000305–KB, 2004–SC–000332–KB, 2004–SC–000336–KB, 2004–SC–000347–KB, 2004–SC–000357–KB, 2004–SC–000349–KB, 2004–SC–000350–KB, 2004–SC–000346–KB, 2004–SC–000339–KB.

Supreme Court of Kentucky.

May 19, 2005.

As Amended June 1 and 9, 2005.

David A. Sexton, Louisville, Kenton R. Smith, Brandenburg, Nikolas M. Fegenbush, Mt. Sterling, Patrick Michael Malone, Lexington, Roy Kimberly Snell, LaGrange, George Barry Bertram, Campbellsville, Charles J. Cronan, Louisville, Richard Boling, Hopkinsville, Teresa Young, Deborah Jeanne Anderson, Louisville, Counsel for Appellant.

Linda Gosnell, Kentucky Bar Association, Bruce K. Davis, Kentucky Bar Association, Counsel for Appellee.

J. David Niehaus, Louisville, Counsel for Amicus Curiae, Louisville Metro Public Defender.

Jerry J. Cox, Mt. Vernon, William E. Johnson, Frankfort, Phyllis K. Lonneman, Elizabethtown, W. Robert Lutz, Covington, Alec G. Stone, Brandenburg, Kathryn G. Wood, Somerset, Counsel for Amicus Curiae, Kentucky Association of Criminal Defense Lawyers.

## OPINION AND ORDER

LAMBERT, Chief Justice.

On or about, April 15, 2004, Movants, the Honorable R. David Stengel (STENGEL), Richard Boling (BOLING), Barry Bertram (BERTRAM), Roy K. Snell (SNELL), Raymond M. Larson (LARSON), George Moore (MOORE), Kenton R. Smith (SMITH), Irv Maze (MAZE) (seven Commonwealths Attorneys and one County Attorney) and the Kentucky Medical Association (KMA), filed motions under SCR 3.530(5) for review of Ethics Opinion E–423 (OPINION) adopted by the Kentucky Bar Association (KBA) Board of Governors in January 2004 and published in the March 2004 issue of the Kentucky Bench & Bar. Opinion E–423 addresses the use of subpoenas in criminal proceedings, including Grand Jury proceedings, under RCr 5.06 and 7.02. The Opinion was promulgated prior to our January

2005 amendment of RCr 5.06, which added the statement that "RCr 7.02 shall apply to Grand Jury subpoenas."

## INTRODUCTION

The first question posed and answered by the Opinion is "**may a lawyer use a subpoena to compel the attendance of a witness at a pretrial court proceeding, and then, after service, invite the witness to make a statement or execute an affidavit in the requesting lawyers' office without notice to opposing counsel, where required and thereafter relieve the witness of the obligation to appear at the court proceeding?**" To this question the Ethics Committee and the Board of Governors answered "NO."

The second question posed and answered by the Opinion is "**may a lawyer issue a subpoena to a person or entity accompanied by a letter (or by other means) inviting that person or entity to 'certify' requested documents and provide them directly to the requesting lawyer, in lieu of attending a pretrial hearing or trial, without notice to opposing counsel, or a Grand Jury proceeding where such notice is not required?**" The Committee and the Board of Governors again answered this question "NO."

The Movants contest the validity of the Opinion under SCR 3.530(5), but **only insofar as the Opinion deals with preindictment Grand Jury investigations.** They do not challenge its propriety in any post-indictment settings. Thus, no other parts of the Opinion are before us for approval or disapproval. Unfortunately, the structure of the Opinion does not allow segregating its treatment of these very different types of criminal proceedings.

The Movants' grounds for challenge are (1) that the Opinion changes well-settled

law, (2) that the Opinion is outside the jurisdiction of the Ethics Committee as set out by SCR 3.530(1), since it was not issued in response to a request from an attorney who was in doubt as to the propriety of **his contemplated actions,** (3) that the Opinion does not differentiate between the subpoena power of a Grand Jury prior to an indictment and the subpoena power of the Court after indictment, (4) that the Opinion places a higher burden on the admission of evidence before the Grand Jury than required for evidence at trial, and (5) that the Opinion impermissibly places an overly burdensome strain on public resources, has a "chilling effect" on current practices and procedures and is highly impracticable.

The KMA "asks this Court to either clarify or modify the application of Opinion E–423 in such a way as avoids the necessity of yet another administrative burden being imposed on the offices of physicians by requiring their personal appearance to produce and authenticate medical records subpoenaed by Grand Juries."

The KBA responds (1) that SCR 3.530(2) "does not require that...formal opinions be issued by way of individual requests for rulings," (2) that RCr 5.06, in dealing with Grand Jury subpoenas, is more restrictive than the use of subpoenas for post-indictment proceedings under RCr 7.02, (3) that Movants' reliance on the rules and practices of foreign or federal jurisdictions is inappropriate as their rules and procedures (which allow same) differ from Kentucky's, (4) that the current criminal rules and forms do not authorize an alternative form of subpoenas and (5) that the Opinion does not have an independent disciplinary (chilling) effect since it's advisory only.

### REVIEW OF ETHICS OPINIONS

■ The Ethics Committee of the KBA may submit to the KBA Board of Governors a formal advisory opinion setting forth what activities constitute the ethical or unethical practice of law. "If the recommended Opinion is approved by three-fourths of the Board of Governors, it carries the weight of an advisory opinion. This Court, however, is not bound by its terms. On proper request by an aggrieved party, we have the authority to evaluate the Opinion and determine whether it accurately states the law." *Countrywide Home Loans v. Kentucky Bar Association,* 113 S.W.3d 105, 107 (Ky.2003). The procedure is set out in SCR 3.530(5).

"Inquiring attorneys and ethics committee members tend to think of the opinions as equal in authority to court rules. The result is, that when known, the opinions tend to shape conduct to the same degree as the rules. Attorneys are afraid to engage in conduct when told by the Ethics Committee and Board of Governors that they may not engage in such conduct." William H. Fortune, *The Role of Ethics and Unauthorized Practice Opinions in Regulating the Practice of Law* 309 N. Ky. L.Rev. 309, 321 (1998). Thus, this court must always be aware of the potential "chilling effect" ethics opinions can have on our practices and procedures.

### THE DISAGREEMENT OVER THE OPINION

Essentially E–423 would bar (as unethical) a Commonwealth's Attorney, acting on behalf of the Grand Jury, from serving a person or entity with a subpoena duces tecum, then allowing the person or entity served to certify the documents, and deliver them to the Commonwealth's Attorney, or Grand Jury, without the personal attendance and testimony from the business records custodian or other witnesses.

■ Moreover, the Opinion suggests subpoenas for the Grand Jury **may only be issued by the Circuit Court Judge**

under RCr 5.06, as opposed to the Clerk of the Court under RCr 7.02.

As was noted by the Movants at the Oral Arguments on this matter, this interpretation is totally at odds with the actual practice which has existed for more years than this Court can remember.[1] With this position in mind, if one looks at RCr 6.24, you would have to ask: "why would you need approval of the Circuit Judge to subpoena an attorney, or his staff, under RCr 6.24, if, as is argued, under RCr 5.06, the Judge is the one who decides whether or not to sign and issue the subpoena **for all Grand Jury witnesses?**" The answer is amply demonstrated by our history of practice.

RCr 5.06 says the "Circuit Court" shall issue the subpoena, it does not say the "Judge of the Circuit Court." In fact, the subpoena is issued by the "Circuit Court," through its clerk, as are all subpoenas. Generally, the Judge of the Circuit Court is not aware of what witnesses are appearing before the Grand Jury, thus the requirement that the Judge's permission be secured prior to the issuance of a subpoena for the appearance of attorneys, or their staff, under RCr 6.24. This was true even before we made RCr 7.02 applicable to RCr 5.06 by our amendment in January 2005. Thus, except where provided otherwise, as in RCr 6.24, subpoenas are issued by the clerk of the court.

One cannot forget that the Grand Jury is a constitutional body. Ky. Const. § 248. Thus, while it is a part of the Circuit Court and its processes, "this does not mean...that the court 'controls' the grand jury's proceedings. 'The grand jury's functional independence from the judicial branch is evident both in the scope of its power to investigate criminal wrongdoing

and in the manner in which that power is exercised."' *Hoskins v. Maricle,* 150 S.W.3d 1, 17 (Ky.2004) (quoting *United States v. Williams,* 504 U.S. 36, 48, 112 S.Ct. 1735, 1742, 118 L.Ed.2d 352 (1992)). To interpret RCr 5.06 in such a manner as to give the Judge of the Circuit Court the right and power to control who the Grand Jury can subpoena gives away control of who it can effectively investigate. The more concentrated the power, the more dangerous it becomes to our liberties. Thus, our system of checks and balances are very fine-tuned.

For instance, our Grand Jurors are now chosen at random, (Administrative Procedure of the Court of Justice, 2–10, Selection of Petit and Grand Jury), not picked by the Judge. Nor have our predecessors, in their wisdom, seen fit to give the power to control the issuance of subpoenas to any one person. "The clerk **shall issue** a subpoena, signed but otherwise in blank, to a party requesting it, who shall fill in the blanks before it is served." RCr 7.02(6) (emphasis added). And when this power is abused, we retain means of redress. *See, Bishop v. Caudill,* 87 S.W.3d 1 (Ky.2002).

■ Going further, the Opinion would bar the Commonwealth's Attorney, or his or her agents, from using their discretion, upon behalf of the Grand Jury, in excusing witnesses from appearances once they've been interviewed or given written statements. In essence, the Opinion relies on *Anderson v. Commonwealth,* 63 S.W.3d 135 (Ky.2002) for the proposition that if a party is subpoenaed before a Grand Jury, he can only comply with the command of the subpoena by actually appearing before the Grand Jury, testifying, and then being released by the Judge of the Circuit

---

1. Not one of the Justices sitting on this case who have served as former Circuit Judges (5) can recall ever having signed or personally issued a subpoena for a Grand Jury.

Court.[2] Again, this is an interpretation of the rules that is at odds with the practice as has preexisted the memory of the current Justices on this Court.

We have never held that a Grand Jury or the Commonwealth's Attorney could not waive or excuse full or partial compliance with the command of the subpoena, or subpoena duces tecum. *Anderson* dealt only with criminal trial subpoenas. It was a case where the Defendant relied upon the availability and presence of a witness subpoenaed by the Commonwealth for trial. The defense felt the witness would be significant for its case. However, unbeknownst to the Defendant, the Commonwealth excused the witness. Very clearly, we held under those circumstances, the witness had " 'a continuing obligation . . . to be available as a witness until the case was concluded or until he was dismissed by the court.' " *Anderson*, 63 S.W.3d at 142. (*quoting Otis v. Meade*, 483 S.W.2d 161, 162 (Ky.1972)). We did not hold that he had to testify for the Commonwealth as he was subpoenaed to do; that was the prerogative of the Commonwealth.

■ And what a witness does in front of the Grand Jury, or its agent, the Commonwealth's Attorney, is the prerogative of the Grand Jury. The Grand Jury is "an investigative body 'acting independently of either (the) prosecuting attorney or judge.' " *United States v. Dionisio*, 410 U.S. 1, 16, 93 S.Ct. 764, 773, 35 L.Ed.2d 67 (1973) (*quoting Stirone v. United States*, 361 U.S. 212, 80 S.Ct. 270, 273, 4 L.Ed.2d 252 (1960)). And it should remain so.

■ Fourthly, the Opinion establishes as unethical the issuance of subpoenas to out-of-state parties, whether by fax, mail or otherwise, for the production of records, unless they are served under KRS 421.250. Being a uniform act, KRS 421.250 has been interpreted to authorize subpoenas duces tecum for records. *See*, 7 A.L.R.4th 836; *see also*, *Ex parte Simmons*, 668 So.2d 901 (Ala.Cr.App.1995). The position taken by the Opinion seems to suggest that the Grand Jury may only acquire records through compulsion as opposed to contact and voluntary release.

Processes under KRS 421.250 require motions in the Court convening the Grand Jury along with an order, then a subsequent appearance in the court of record within the county of the other state where the witness or records are found, along with secondary motions and orders therefrom. It is a tedious, time consuming and expensive process. However, as was noted at oral argument, most out-of-state businesses cooperate voluntarily once faxed a copy of the subpoena. E–423 can be read to condemn this voluntary practice.

In particular, the KBA noted in its brief that "the committee's primary concern was that by altering an official subpoena form to provide for an authorized form of alternative compliance, or causing a subpoena to be transmitted across state lines without compliance with the statutory procedures for out-of-state service, a lawyer violates the ethical rules. Such 'invitation or alteration' obfuscates the fact that the subpoena itself had no legal authority; thus, the recipient of the subpoena **is misled into believing that it is valid** and that he or she is legally obligated to comply or be subject to contempt. Such conduct is dishonest and from an ethical perspective, violates both SCR 3.130–3.4(c) and 8.3(c) . . . . "

**2.** If this position were approved, the testimony of every witness subpoenaed would be immediately available to the defense through the Grand Jury transcripts under RCr 5.16(3), as opposed to witnesses' statements, which are now due more than 48 hours prior to trial, or sooner, if ordered by the Court, per RCr 7.26.

The Opinion suggests subpoenas are being sent out of state in a manner that intentionally suggests they are legally binding, yet the language of the Opinion is not limited to this premise.

In their arguments, the Movants acknowledge the availability of KRS 421.250, but suggest the entities are most often experienced and generally aware of KRS 421.250, and ask only for a faxed copy of the subpoena prior to voluntary compliance. They note the savings to the Commonwealth by this voluntary cooperation. For example, Movants argue that "the Jefferson County Grand Jury alone issued over 1,000 subpoenas last year. According to the Opinion, only medical records are exempt from the requirement that the custodian personally attend. Thus, under KRS 421.250, all out of state witnesses must be reimbursed for mileage and paid $5.00...under KRS 421.030, the Commonwealth must reimburse witnesses the necessary expenses for attendance. Our Grand Jury regularly subpoenas records from other states, some as far away as California. Airfare, accommodations, and per diem allowance for a custodian from out of state **could cost the Commonwealth hundreds of thousands of dollars each year in Jefferson County alone**. All this for a two or three second statement attesting to the authenticity of the already certified records. This is not the way the Commonwealth should spend its precious resources."

We are simply not asked to approve an Opinion that limits its effect to an intentional misrepresentation of the validity of a subpoena and we decline to approve any Opinion that suggests it is unethical per se for purposes of these investigations. In our opinion, it is not unethical to contact an entity out of state and to fax them a subpoena if requested, or to advise them that KRS 421.250 will be used, if necessary (as long as such use is intended at the time) if compliance is not forthcoming.

"An 'ethics question' should only arise if there is a deliberate attempt to circumvent the...Rules as written or customarily applied in the particular forum, perhaps with a view to dispensing with notice to an opponent or securing some unfair advantage. In the absence of same, there would seem to be no real question of 'ethics' involved, but only a difference of opinion as to the proper interpretation of the...Rules." KBA E–304.

 That the documents received in such manner would be inadmissible at trial is irrelevant; hearsay evidence is admissible before a Grand Jury. See KRE 1101(d)(2); cf. United States v. Barone, 584 F.2d 118 (6th Cir.1978). A Grand Jury can issue an indictment even if the District Court determines a lack of probable cause to support the charges. Commonwealth v. Yelder, 88 S.W.3d 435 (Ky. App.2002). Moreover, in reviewing the various forms of subpoenas contained in the record, we find no alterations as to form that violate our rules.

Recognizing however, that different practitioners in different practices are reading RCr 5.06 and 7.02 in a different light, a majority of this Court, pursuant to RCr 13.08, now "otherwise directs" that RCr 5.06 be, and is, hereby amended, effective as the date of the finality of this Opinion, to read:

RCr 5.06 Attendance of Witnesses before the Grand Jury

The Clerk, upon request of the foreperson of the Grand Jury or of the attorney for the Commonwealth, shall issue subpoenas for witnesses. The attendance of witnesses may be coerced as in other judicial proceedings, unless, and until, excused, or modified, by the requesting party. RCr 7.02 shall apply to

Grand Jury subpoenas except that a subpoena issued pursuant to this rule may command the person to whom it is directed to produce the books, papers, documents or other objects designated therein to the foreperson of the Grand Jury or the Commonwealths Attorney or his agent, without requiring the personal appearance of the witness before the Grand Jury.

For the above reasons, we hereby Vacate all portions of KBA Opinion E–423 to the extent it addresses Grand Jury practices and proceedings. Having done so, we will not here address Movants' argument that Formal Opinions are limited to standards set out in SCR 3.350(1). Tomorrow is another day.

All concur.