**COMMONWEALTH of Kentucky,
Appellant,**

**v.**

**Lennie G. HOUSE, Appellee.**

**No. 2008–SC–000114–DG.**

Supreme Court of Kentucky.

Aug. 27, 2009.

Rehearing Denied Nov. 25, 2009.

Jack Conway, Attorney General of Kentucky, Perry Thomas Ryan, Assistant Attorney General, Office of Attorney General, Criminal Appellate Division, Frankfort, KY, Counsel for Appellant.

Harold Lewis Kirtley II, Thomas Dulaney Bullock, Bullock & Coffman, LLP, Lexington, KY, Counsel for Appellee.

Allen W. Holbrook, Sullivan, Mountjoy, Stainback & Miller, PSC, Owensboro, KY, Counsel for Amicus Curiae, CMI, Inc.

Opinion of the Court by Justice ABRAMSON.

The Commonwealth seeks discretionary review of a Court of Appeals' opinion reversing an agreed order of conviction entered following Lennie House's conditional guilty plea to a charge of driving under the influence (DUI). The Court of Appeals remanded the matter to the Fayette District Court for additional proceedings including the enforcement of a subpoena *duces tecum* pursuant to which House seeks to discover the computer code embedded in the Intoxilyzer 5000 EN. The Intoxilyzer, manufactured by CMI, Inc., of Owensboro, Kentucky, is the device adopted in Kentucky for measuring the alcohol concentration in a DUI suspect's blood. The Court of Appeals ruled that House was entitled to inspect the Intoxilyzer's computer code on the off chance that he might discover problems in the code calling the device's accuracy into question. Because we agree with the Commonwealth that this case raises an important question concerning the scope of a criminal defendant's right to subpoena and inspect evidence prior to trial, we accepted review, and now, having concluded that House is not entitled to the computer code on the facts presented, we reverse.

### RELEVANT FACTS

House was arrested and charged with DUI in March 2006, when a Lexington police officer observed him driving erratically on Tates Creek Road. The officer

reported that when he stopped House he could smell alcohol on House's person; observed an open beer can in the front seat of House's vehicle; had House perform field sobriety tests, all of which House failed; and administered a preliminary breath test, which registered an alcohol concentration of 0.160. Thereupon, the officer arrested House and transported him to the Fayette County Detention Center, where he administered a breath alcohol test with the Intoxilyzer 5000 EN. That device calculated House's blood alcohol level to be 0.201, a level violative of KRS 189A.010(a), which, in pertinent part, makes it unlawful for a person to operate a motor vehicle if the person "[h]a[s] an alcohol concentration of 0.08 or more as measured by a scientifically reliable test or tests of a sample of the person's breath...."

On the basis of the officer's report and the Intoxilyzer result, House was charged in Fayette District Court with first offense DUI. Prior to trial, House served the Commonwealth with a discovery motion that included a demand for the Intoxilyzer's "source code," the computer commands that control the Intoxilyzer as it isolates the subject's breath sample, tests the sample for the presence and the amount of alcohol, and then uses the test results to calculate the subject's blood alcohol level. When the Commonwealth denied this request because it did not have possession or control of the manufacturer's computer code, House, pursuant to RCr 7.02(3), served CMI with a subpoena *duces tecum* demanding that it produce the "source code" at an August 8, 2006 pretrial hearing. At the hearing, House introduced an expert who testified that if given access to the code he could examine it for "bugs," *i.e.*, errors in the code's logic which could cause the machine to produce inaccurate results. The expert admitted on cross-examination, however, that he

knew of no reason to suspect that the code was in any way flawed. At the conclusion of the expert's testimony, CMI and the Commonwealth both moved that the subpoena be quashed on the grounds, among others, that by demanding the production of CMI's trade secrets, the subpoena was unreasonable and oppressive and that House had failed to establish that the source code was relevant to his case. House argued that he was entitled to the code not only under RCr 7.02(3) but also under the Sixth Amendment to the United States Constitution. The district court agreed with CMI and the Commonwealth that House had failed to establish relevancy and so granted the motions to quash.

In the wake of the district court's ruling, House pled guilty to DUI, first offense, but reserved his right to appeal the order quashing his CMI subpoena. He duly appealed to the Fayette Circuit Court, which affirmed, agreeing with the district court that House's failure to identify some reason to suspect a material error in the source code defeated his demand to inspect it.

House then sought discretionary review in the Court of Appeals, which, in a divided opinion, reversed. The Court of Appeals' majority ruled that House was entitled to search CMI's Intoxilyzer source code for errors because under RCr 7.02(3) a subpoena *duces tecum* may be quashed only if "unreasonable or oppressive" and in its view House's subpoena was neither. Having considered the Commonwealth's challenge to the Court of Appeals' reading of RCr 7.02(3), we agree with the Commonwealth that House's subpoena was indeed unreasonable and should be quashed.

### ANALYSIS

As part of the rule governing subpoenas in criminal cases, RCr 7.02(3) provides for subpoenas *duces tecum* as follows:

A subpoena may also command the person to whom it is directed to produce the books, papers, documents or other objects designated therein. The court on motion made promptly may quash or modify the subpoena if compliance would be unreasonable or oppressive. The court may direct that books, papers, documents or objects designated in the subpoena be produced before the court at a time prior to the trial or prior to the time when they are to be offered in evidence and may upon their production permit the books, papers, documents or objects or portions thereof to be inspected by the parties and their attorneys. Although RCr 7.02(3) has not been construed in Kentucky, our rule was taken verbatim from Federal Rule of Criminal Procedure 17(c), which the United States Supreme Court has explained was not intended to serve as a discovery device for criminal cases, but was meant "to expedite the trial by providing a time and place before trial for the inspection of subpoenaed materials." *United States v. Nixon,* 418 U.S. 683, 698–99, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974) (*citing Bowman Dairy Co. v. United States,* 341 U.S. 214, 71 S.Ct. 675, 95 L.Ed. 879 (1951)). Accordingly, the high Court has adopted the following four-part test for determining when a movant is entitled to the production of subpoenaed materials prior to trial:

> [T]he moving party must show: (1) that the documents are evidentiary and relevant; (2) that they are not otherwise procurable reasonably in advance of trial by exercise of due diligence; (3) that the party cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial; and (4) that the application is made in good faith and is not intended as a general "fishing expedition."

*Id.* at 699–700, 94 S.Ct. 3090 (footnote omitted). A subpoena that fails this test is not "reasonable" for the purposes of the federal rule. Notably, the federal courts applying this test have held that the relevancy and no-fishing-expedition prongs are not satisfied by subpoenas grounded in nothing more than conjecture or mere hope that the subpoenaed material will include admissible evidence. *See, e.g. United States v. Abdush–Shakur,* 465 F.3d 458 (10th Cir.2006); *United States v. Tokash,* 282 F.3d 962 (7th Cir.2002); *United States v. Hang,* 75 F.3d 1275 (8th Cir. 1996); *United States v. Arditti,* 955 F.2d 331 (5th Cir.1992); *United States v. Cuthbertson,* 630 F.2d 139 (3rd Cir.1980). *But see United States v. Tucker,* 249 F.R.D. 58 (S.D.N.Y.2008) (distinguishing defense subpoenas from prosecution subpoenas and opining that the *Nixon* test does not apply to the former).

Our verbatim adoption of the federal rule makes this federal precedent particularly apt and persuasive, and we conclude that, like the federal rule, RCr 7.02(3) is not a discovery device, but rather a means of procuring evidence and of permitting pre-trial inspection of evidence when inspection at trial would disrupt the proceedings. Like most of the myriad other matters a trial court is called upon to decide during the course of proceedings, motions for pre-trial production under RCr 7.02(3) and motions to quash subpoenas are subject to the trial court's sound discretion and will be reversed on appeal only for abuse of that discretion. *Cf. Transit Authority of River City v. Montgomery,* 836 S.W.2d 413, 416 (Ky.1992). ("[A trial judge] sits to administer the law and guide the proceedings before him. He is vested with a large discretion in the conduct of the trial of causes and an appellate court will not interpose to control the exercise of such discretion by a court of original juris-

diction, unless there has been an abuse or a most unwise exercise thereof.") A subpoena *duces tecum* under our rule may be quashed if it is "unreasonable or oppressive," and we agree with the federal courts that it is unreasonable if, as in this case, the party demanding production can point to nothing more than hope or conjecture that the subpoenaed material will provide admissible evidence. House, as noted above, sought CMI's Intoxilyzer code hoping that his expert might discover flaws in it, but he presented no evidence whatsoever suggesting that the code was flawed. His subpoena was nothing but a classic fishing expedition, which RCr 7.02(3) does not allow. The Court of Appeals erred by ruling otherwise.

House also contends that even if RCr 7.02(3) does not entitle him to inspect CMI's Intoxilyzer code, the Confrontation Clause of the Sixth Amendment to the United States Constitution does. This issue is not properly before us, however, because the Court of Appeals did not reach it and House has failed to raise it in this Court by a cross-motion for discretionary review. As we recently reiterated in *Louisville and Jefferson County Metropolitan Sewer District v. Bischoff*, 248 S.W.3d 533 (Ky.2007), CR 76.21(1) requires such a cross-motion by the party prevailing in the Court of Appeals if he wishes review of issues raised in but not addressed by the Court of Appeals or issues the Court of Appeals decided adversely to him. "If the party prevailing in the Court of Appeals wishes further consideration of such issues along with the issues for which discretionary review has been granted, the prevailing party *must* file a cross motion for discretionary review." *Perry v. Williamson*, 824 S.W.2d 869, 871 (Ky.1992). Because House failed to abide by this rule, we must decline to address his constitutional claim.

### CONCLUSION

In sum, CR 7.02(3) provides for subpoenas *duces tecum* to permit pre-trial inspection of evidence to be admitted at trial. It is not meant to be a discovery device, however, and does not permit the subpoenaing of materials in the mere hope that they will prove evidentiary. Because House's CMI subpoena demanding production of the Intoxilyzer's source code was based on nothing more substantial than the conjecture that there might be material flaws in the code, the subpoena was "unreasonable" for the purposes of the rule, and the Court of Appeals erred by requiring that it be enforced. Accordingly, we reverse the January 18, 2008 Opinion of the Court of Appeals and thereby reinstate the Fayette District Court's September 1, 2006 Order quashing House's CMI subpoena and its October 26, 2006 Agreed Order providing for House's conviction in the event his appeal of the subpoena issue was unsuccessful.

All sitting. All concur.