COMMONWEALTH of Kentucky,
Appellant,

v.

Michael L. WILSON, Appellee.

No. 2011–SC–000157–CL.

Supreme Court of Kentucky.

Sept. 20, 2012.

Rehearing Denied Dec. 20, 2012.

Jack Conway, Attorney General, Michael J. O'Connell, Jefferson County Attorney, David A. Sexton, Assistant Jefferson County Attorney, St. Louisville, KY, for appellant.

Joseph V. Aprile, II, Lynch, Cox, Gilman & Goodman, P.S.C., Louisville, KY, for appellee.

Raymond David Stengel, Commonwealth Attorney, Dorislee J. Gilbert, Special Assistant Attorney General, Louisville, KY, for Amicus Curiae, R. David Stengel Commonwealth's Attorney for the 30th Judicial Circuit.

David S. Hoskins, Kentucky Association of Criminal Defense Lawyers, Corbin, KY, for Amicus Curiae, Kentucky Association Of Criminal Defense Attorneys.

Opinion of the Court by Justice CUNNINGHAM.

Pursuant to CR 76.37(1), this Court granted the certification request of the

Jefferson County Attorney to answer the following question of Kentucky law:

**Does Kentucky law authorize an ex parte motion by a criminal defendant to vacate or set aside a warrant for his or her arrest with no notice or opportunity for the Commonwealth to be heard?**

The answer is an unequivocal no.

The facts giving rise to this question provide a vehicle for us to graphically depict the need to put this particular ex parte practice to rest. A criminal complaint was taken in the Jefferson District Court through the County Attorney on February 17, 2011. Cynthia Wilson alleged that she had been the victim of threats from the Appellee, Michael L. Wilson, as well as a physical assault. The complaint alleged that she suffered physical injuries, including scratches and bruising to her neck and arms and pain in her lower back and left side. Wilson was charged with the criminal offense of assault in the fourth degree. The arrest warrant was issued on February 17, 2011. On the following day, February 18—and before Wilson was arrested—Wilson's attorney made an ex parte request to a different Jefferson District Court judge from the one who issued the warrant.

The request was to set the warrant aside and issue a summons. The judge was told by Wilson's lawyer that the victim had recanted her story. The warrant was withdrawn and a summons issued instead. The Commonwealth's request for the reinstatement of the arrest warrant was denied. After much complaining of the process by the Commonwealth and other procedural jousting, Wilson pled guilty to the charge.

Both sides apparently agree that such ex parte communication by criminal defense lawyers with judges, after warrants have been issued, is a common practice in the Jefferson District Court. For this reason, this Court has accepted the request for the certification of the law.

We need to go no further to deplore this practice than Supreme Court Rule 4.300, Canon 3B(7), which prohibits ex parte contacts in these circumstances. That rule states that "[w]ith regard to a pending or impending proceeding, a judge shall not initiate, permit, or consider ex parte communications with attorneys and shall not initiate, encourage or consider ex parte communications with parties...." There are exceptions in this rule when dealing with certain matters that do not deal with "substantive matters." SCR 3.130–3.5 also prohibits a lawyer from engaging in an ex parte contact with a judge "as to the merits of the cause except as permitted by law or court order." A lawyer who seeks to have a summons substituted for an arrest warrant on the grounds that the prosecuting witness has recanted her statement to authorities is undoubtedly addressing a "substantive" matter and "merits of the cause." There is other authority deeming ex parte contact between the trial judge and a defense attorney impermissible. *Application of Storer Communications, Inc.,* 828 F.2d 330, 335 (6th Cir.1987) ("The public has a legitimate interest in criminal proceedings, and this interest is thwarted by ex parte proceedings.... Ex parte proceedings, particularly in criminal cases, are contrary to the most basic concepts of American justice and should not be permitted except possibly in most extraordinary cases involving national security."); AMERICAN BAR ASSOCIATION, STANDARDS FOR CRIMINAL JUSTICE, 6–2.1 (2nd ed.1986) ("The trial judge should insist that neither the prosecutor nor the defense counsel nor any other person discuss a pending case with the judge ex parte, except after adequate notice to all other parties or when authorized by law or

in accordance with approved practice. The judge should ensure that all such ex parte communications are subsequently noted on the record.").

Wilson seems to justify this practice along a quid pro quo argument. Since the Commonwealth obtains an arrest warrant through ex parte communications with an issuing magistrate, the defense is justified in engaging in such one-sided communications with the court. This is both a fallacious and potentially disruptive interpretation of our criminal procedure as set down by statute and rule.

■ Our criminal rules establish clearly the method to be used in the issuance of criminal warrants. RCr 2.04(1) sets out the procedure for the taking of an arrest warrant. It provides that a judge shall issue a warrant for the arrest of a defendant when after "an examination of the complaint it appears to the judge ... that there is probable cause to believe that an offense has been committed and that the defendant committed it." No notice or hearing is required.

■ The adversarial system is not involved in the initiation of criminal charges. To implant one would not only be impractical, but would simply seize up the criminal procedure with inertia and chaos. Just as a defense lawyer is not due notice or the right to appear before a grand jury when an indictment is being considered, neither does the defendant have the right to be heard before a warrant is taken. To hold to such practice would even undermine our law concerning the rights of victims in domestic violence cases when seeking emergency protective orders. KRS 403.750; KRS 403.725. It is only after charges are brought that the right to counsel is invoked. Therefore, the defendant is not entitled to some kind of "payback" unilateral access to the judge as a recipro-cal privilege for the Commonwealth having requested the magistrate for a warrant.

We fail to find any persuasive authority for the right of a defendant to approach a judge ex parte in order to have an arrest warrant withdrawn. Once the warrant is executed, the criminal rules establish strict procedural guidelines to be followed, not only to protect the defendant but the public safety as well. From the time a defendant is taken into custody, he or she is endowed with certain constitutional and procedural rights, most of which are known by all first-year law students. Except for the special exception allowed in criminal trials for the securing of funds for defense expert witnesses, neither the defendant nor Commonwealth has either the right or permission for a one-way communication with the judge. KRS 31.185; *Commonwealth v. Wooten*, 269 S.W.3d 857 (Ky.2008). And even with the expert witness exception, counsel for defendant is still obligated to make a request, presumably by motion, for the ex parte communication.

We note in passing that other jurisdictions have roundly condemned similar ex parte practices even in dealing with traffic offenses. *Mississippi Com'n on Judicial Performance v. Bowen*, 662 So.2d 551 (Miss.1995) (holding respondent judge in violation of the Code of Judicial Conduct for dismissing 18 speeding tickets after having ex parte communications with each of the defendants); *Matter of Ross*, 428 A.2d 858 (Me.1981) (holding that respondent judge violated the Code of Judicial Conduct by holding ex parte hearings involving personal acquaintances that led to the suppression of traffic violation charges); *In re Conduct of Stacey*, 737 N.W.2d 345 (Minn.2007) (holding the respondent judge violated the Code of Judicial Conduct for handling the traffic of-

fense of a personal acquaintance through ex parte communications).

The adversarial system has been adopted by the American system of justice. Contrary to the way many think, it was never intended to be an entertaining game for lawyers. It was accepted with the belief that a fervent and competent representation of opposing viewpoints of litigation would serve to forge the essence of the truth and that justice would prevail. *See* CHARLES W. WOLFRAM, MODERN LEGAL ETHICS, 563–69 (West Publishing Co., 1986); *See also* STEPHAN LANDSMAN, READINGS ON ADVERSARIAL JUSTICE, THE AMERICAN APPROACH TO ADJUDICATION, 1–21, 33–37 (West Publishing Co., 1988). It is flawed in reality, but the ideal and purpose of it remains pure. Its goal is to produce more light than heat for the fact-finder in criminal and civil cases. This aim is thwarted when the magistrate receives just one side of the story in criminal proceedings by a lawyer ethically obligated to represent only one side. The danger lurking in this situation is plainly illustrated in the case before us. The prosecutor was locked out from the opportunity to show that, in spite of the recantation of the victim, there was other very probative and persuasive evidence indicating that an assault had taken place. A judge making decisions without this information may very well place the victim, as well as the public, at risk.

We forbid it.

■ One-sided contacts between judges and lawyers or parties regarding pending and impending cases are prohibited, even in matters where the legal stakes are lower than those at issue in this case. In particular, Kentucky's district judges handle a large volume of routine matters, including traffic citations and criminal misdemeanor cases. Disposition of most of these cases evades public scrutiny and lawyerly oversight. As a result, the lines of

ethical conduct have, in some areas, become blurred. Courthouse culture seems to tolerate, and perhaps even encourage, in these low-stakes cases a one-sided intercession with the judge by parties, lawyers, or even elected officials. But Kentucky's Judicial Canons forbid one-sided contacts relating to all judicial proceedings, except in regards to scheduling, initial fixing of bail, administrative purposes, or emergencies that do not deal with substantive matters or issues on the merits. SCR 4.300, Canon 3(B)(7)(a). And even these exceptions are limited to instances in which nobody will gain a procedural or tactical advantage, and the judge notifies all other parties of the substance of the ex parte communication and allows an opportunity to respond. SCR 4.300, Canon 3(B)(7)(a)(i) and (ii). "[A] judge must discourage ex parte communication and allow it only if all the criteria stated in Section 3B(7) are clearly met." SCR Commentary on SCR 4.300, Canon 3(B)(6)–(7). And "local policy' does not come within the enumerated exceptions...." *Thomas v. Judicial Conduct Com'n,* 77 S.W.3d 578, 580 (Ky.2002). It is the judge's ethical responsibility to maintain the high standard for local practice, prohibiting improper ex parte contacts by lawyers and nonlawyers alike. It is the lawyer's correlative ethical duty under SCR 1.130–3.5 to avoid engaging in one-sided practice.

■ We fully recognize that, unless ordered by the judge, neither party is required to be present at hearings dealing with pre-trial motions, to include the request to withdraw a warrant. But the opposing party must be given notice and the opportunity to be present and to be heard. And that notice must be reasonable in terms of both time and logistics.

We also acknowledge that most Kentucky prosecutors and defense lawyers— hopefully all—operate under a revered

honor code. Under this procedure, the defense lawyer confers with the prosecutor first, who may very well allow the trusted adversary to convey his or her position to the court without the prosecutor appearing. This is particularly true when the prosecutor has no objection to the request of the defendant's counsel. Rocky is the road of the lawyer who breaches that trust. Mutual respect is mandatory, not only for opposing counsel, but the interest they represent.

The law is so certified.

All sitting. All concur.