NICKELL, JUDGE:
*558 In October 2014, Joseph Cambron was indicted on one count of murder and one count of tampering with physical evidence. Both charges resulted from the stabbing death of a twelve-year-old boy in Jefferson County, Kentucky, and disposal of the murder weapon. Cambron confessed to both crimes, was declared indigent, and is represented by the Office of the Louisville Metro Public Defender (OLMPD). He is awaiting trial.
BACKGROUND
Unbeknownst to the Commonwealth, in a span of thirteen months, the Jefferson Circuit Court entered more than thirty ex parte orders in the case.[1] Each is marked "sealed" and none is listed on the index to the thirty-eight-page appellate record. All but three of the orders direct entities to "produce, within ten days of this order, certified copies of the complete records relating to the above named [sic] defendant." The copied records were to be delivered to the OLMPD's Mitigation Coordinator and no one else. The Commonwealth was never notified by OLMPD or the trial court of any request for, nor entry of, an ex parte order.
Entry of twenty-nine of the orders did not result from the filing of a written motion served upon the Commonwealth with an opportunity to respond. Instead, each resulted from "[a]n oral motion having been made and the court being sufficiently advised." Based on the dates on which the ex parte orders were entered, the defense team may have conversed with the trial court at least seven separate times without the Commonwealth's knowledge. Entry of these orders clearly resulted entirely from one-sided oral requests from the defense. We do not know what argument-if any-was made to the trial court to justify entry; nothing was recorded for subsequent review. Nor do we know how-or whether-the trial court analyzed the requests before entering the orders. The orders reflect no rationale.
One of the sealed ex parte orders for production of records was directed to the Louisville Metro Police Department Crimes Against Children Unit (CACU).[2]
*559 Rather than complying with the sealed ex parte order-or challenging the order directly-CACU alerted the Commonwealth to its receipt. Shortly thereafter, the Commonwealth moved to quash the order for production and sought disclosure of the "nature" of the more than thirty other "sealed" ex parte documents it discovered while searching CourtNet. The Commonwealth requested disclosure so it could file "appropriate objections or other necessary motions." Cambron's attorneys filed and served a partial response on the Commonwealth and provided more detail in an ex parte supplemental response which was not served on the prosecution. According to the Commonwealth, the matter was orally argued in chambers but not recorded. Had CACU not alerted the Commonwealth to its receipt of the ex parte order, this custom-which Cambron's defense team characterizes as "common practice in Jefferson County and throughout the state"-would continue unchecked.
The ex parte orders entered by the trial court-and the briefs filed in this Court-have been sealed. An Order entered simultaneously with this Opinion unseals the appellate briefs and the recording of the oral argument heard by this Court on December 5, 2017. Said Order further directs the trial court, pursuant to Roman Catholic Diocese of Lexington v. Noble , 92 S.W.3d 724, 728 (Ky. 2002), and its progeny, including Courier-Journal, Inc. v. McDonald-Burkman , 298 S.W.3d 846 (Ky. 2009), to analyze each document it previously sealed and to unseal any document which does not comport with the procedure described therein.
This appeal pertains specifically to an opinion and order entered by the Jefferson Circuit Court on August 3, 2016, denying in toto the Commonwealth's motion to quash an ex parte order for production of records directed to CACU and to disclose the nature of all other sealed documents. The trial court found Cambron's rights-to remain silent and to receive due process-as a defendant in a criminal case outweighed any argument made by the Commonwealth. Moreover, by granting Cambron's ex parte motion for production of records the trial court stated it was:
simply expediting the receipt of records to which [Cambron], in good faith, believes he is legally entitled, but that are being denied to him due to circumstances outside of his control.
The trial court went on to say-in its experience-records custodians do not always timely respond to requests, but upon receipt of a court order, they comply swiftly. The trial court reasoned:
denial of records to which the defendant is legally entitled offends the defendant's due process rights. To be forced to give the Commonwealth notice that such records are being sought, however, would run afoul of a defendant's rights to remain silent and develop a confidential and privileged defense strategy. Were the Court not to expedite receipt by way of an ex parte order, it would feel constrained to repeatedly continue the case as the defendant attempted, often in vain, to secure the records on his own. This would practically grind the courthouse to a halt, and harm the Commonwealth and the community's interest in the swift resolution of criminal matters.
While finding no fault with CACU-"[t]his is not meant as an indictment of record custodians, generally, or of LMPD CACU, specifically"-it is curious the trial court found justification for entering an ex parte order directing CACU to respond to the defense team within ten days.
Recognizing its order might appear to give defense attorneys "an unfair advantage," the trial court equated its grant of Cambron's ex parte motion with the Commonwealth *560 seeking a post-indictment search warrant from a non-presiding judge so as not to reveal the prosecution's strategy. In attempting to justify entry of the sealed ex parte order, the trial court wrote:
[b]oth sides occasionally need the imprimatur of the courts to accomplish the discovery they need to acquire in the interest of justice. To suggest that orders such as the one in question somehow but [sic] the Commonwealth at a disadvantage ignores the significant advantages it has in investigative resources, i.e., the police.
The Commonwealth appealed. After thorough review, we reverse and remand for action consistent with this Opinion and a separate Order entered simultaneously.
ANALYSIS
Generally, interpretation of constitutional provisions, statutes, court rules and procedures requires de novo review without deference to the trial court's view.[3] Commonwealth v. Nichols , 280 S.W.3d 39, 42 (Ky. 2009) (quoting Commonwealth v. Yelder , 88 S.W.3d 435, 437 (Ky. App. 2002) ). More particularly, whether the Commonwealth's motion to quash was properly denied turns on whether the trial court abused its discretion. Commonwealth v. House , 295 S.W.3d 825, 828-29 (Ky. 2009). Under either standard, the trial court's opinion and order fails.
We begin with an explanation of terms. An "ex parte communication" is defined as "[a] generally prohibited communication between counsel and the court when opposing counsel is not present." BLACK'S LAW DICTIONARY 597 (7th ed.). When used as an adjective, the phrase "ex parte " is defined as being "[d]one or made at the instance and for the benefit of one party only, and without notice to, or argument by, any person adversely interested[.]" Id.
The trial court saw its role in this case as simply helping a criminal defendant procure records he had been denied. We disagree.
At its heart, this case is not about whether Cambron has been denied records he is constitutionally entitled to receive. It cannot be, for there has been no showing he has been denied anything, despite the trial court writing, "records ... are being denied to [Cambron] due to circumstances outside of his control." Just as there has been no showing of a denial of records, there has been no showing of entitlement to such records, nor that Cambron may acquire them using an ex parte order secretly entered by the trial court. Moreover, there has been no showing of a denial of due process. The trial court has based its decision on an unsupported premise and abused its discretion.
Quite simply, this case is about the proper way to seek records. Kentucky courts have adopted procedures governing acquisition of records. A few long-standing options are: requests under Kentucky's Open Records Act, KRS § 61.870 et seq. ; motions seeking orders pursuant to CR 4 7.02(1); issuance of a subpoena duces tecum pursuant to RCr 7.02(3) ; and, general discovery and inspection as outlined in RCr 7.24. Additionally, when a criminal defendant desires a trial court's help in accelerating the process of acquiring records, he may request a court order pursuant to RCr 8.14 which directs:
[a]n application to the court for an order shall be by motion which shall be in *561 writing unless made during a hearing or trial, shall state with particularity the grounds therefor, and shall set forth the relief or order sought.
These five long-standing and well-established options have worked well in a myriad of cases-both civil and criminal. They ensure all parties are aware of movement in the case and create a level playing field. When these options are ignored, justice is skewed and fairness eliminated. Based on the record and defense counsel's responses during oral argument, Cambron has pursued none of these routine avenues. He suggests his only option for acquiring his own records without revealing his potential defense to the prosecution is seeking multiple ex parte orders. Again, we disagree.
Rather than using any one of several recognized rules, Cambron's defense team attempted to create a new procedure over which it unilaterally exercised complete control to the exclusion of the Commonwealth and in which the trial court appears to have been manipulated. Of perhaps even greater concern to us is Cambron's description of this tactic as "common practice in Jefferson County and throughout the state." When pressed at oral argument, Cambron could not substantiate this claim.
While this is a criminal case, "unless otherwise provided by law, rules of procedure applying to civil cases apply as well to criminal cases." Gholson v. Commonwealth , 308 Ky. 82, 86, 212 S.W.2d 537, 539 (1948). RCr 13.02 authorizes local courts to regulate local practice by adopting their own rules, but only "in any manner not inconsistent with these rules." No rule of criminal procedure applicable in Kentucky authorizes a party to use a trial court's power to procure discovery without serving notice of those discovery efforts on opposing counsel. In fact, just the opposite is true. CR 5.01 requires notice of service to each opposing party and CR 5.02 describes how service may be achieved. CR 5.03 directs in relevant part:
proof of the time and manner of such service shall be filed before action is to be taken thereon by the court or the parties. Proof may be by certificate of a member of the bar of the court or by affidavit of the person who served the papers, or by any other proof satisfactory to the court. Such certificate or affidavit shall identify by name the persons so served.
Additionally, CR 7.02(1) directs:
[a]n application to the court for an order shall be by motion which, unless made during a hearing or trial, shall be made in writing, shall state with particularity the grounds therefor, and shall set forth the relief or order sought. The requirement of writing is fulfilled if the motion is stated in a written notice of the hearing of the motion.
Entry of nearly thirty ex parte orders in this case violated multiple rules-by both defense counsel and the trial court. The defense team gave no notice of its actions to the Commonwealth; the defense team provided no proof of mandatory notice via certificate or satisfactory alternative; the trial court entered ex parte orders without making proof of service on the Commonwealth; and, ex parte orders were entered without written motions being filed specifying grounds therefor and relief sought.
We are baffled by the trial court's belief that repeated oral requests for ex parte orders, and entry of such without notice to opposing counsel, was justified and entirely appropriate. A basic tenet of the legal profession is ex parte communication between a judge and an attorney in a pending case is disfavored. The danger of giving one side "private access to the ear of the court" has been recognized for years. Sanborn v. Commonwealth , 754 S.W.2d 534, 549 (Ky. 1988), overruled on *562 other grounds by Hudson v. Commonwealth , 202 S.W.3d 17, 22 (Ky. 2006) (quoting Haller v. Robbins , 409 F.2d 857, 859 (1st Cir. 1969) ). Moreover, SCR[5] 4.300, Canon 3(B)(7) authorizes ex parte communication between a judge and a party in only limited circumstances-none of which are present in this case. In relevant part, the Canon directs:
(7) A judge shall accord to every person who has a legal interest in a proceeding, or that person's lawyer, the right to be heard according to law. With regard to a pending or impending proceeding, a judge shall not initiate, permit, or consider ex parte communications with attorneys and shall not initiate, encourage or consider ex parte communications with parties, except that:
(a) Where circumstances require, ex parte communications for scheduling, initial fixing of bail, administrative purposes or emergencies that do not deal with substantive matters or issues on the merits are authorized; provided:
(i) the judge reasonably believes that no party will gain a procedural or tactical advantage as a result of the ex parte communication, and
(ii) the judge makes provision promptly to notify all other parties of the substance of the ex parte communication and allows an opportunity to respond.
....
(e) A judge may initiate or consider any ex parte communications when expressly authorized by law to do so.
To summarize, ex parte communication between a judge and a party in an existing or impending case is permitted in only two scenarios: (1) when expressly authorized by law; and, (2) for purposes of scheduling, initial fixing of bail, or administrative reasons or emergencies related to the proceeding, but only if the judge reasonably believes no one will gain a procedural or tactical advantage on a substantive matter or an issue on the merits. When the second exception is invoked, the judge must take steps to ensure all parties are notified of the substance of the communication and are given the opportunity to be heard.
Pertinent portions of the Commentary to the Canon direct:
[t]o the extent reasonably possible, all parties or their lawyers shall be included in communications with a judge.
....
Certain ex parte communication is approved by Section 3B(7) to facilitate scheduling and other administrative purposes and to accommodate emergencies. In general, however, a judge must discourage ex parte communication and allow it only if all the criteria stated in Section 3B(7) are clearly met. A judge must disclose to all parties all ex parte communications described in Sections 3B(7)(a) regarding a proceeding pending or impending before the judge.
Not once in this case, but at least twenty-nine times, the trial court violated this Canon.
Try as they might, Cambron's attorneys have not demonstrated their ex parte communication with the presiding judge was expressly authorized by law. Cambron claims the Fifth,[6] Sixth[7] and Fourteenth Amendments[8] to the United States Constitution *563 guarantee him the trial court's secret assistance to help him collect materials he wants to prepare his defense. He has not convinced us of-and we have not independently located authority for-the notion these provisions authorize secret requests for, and issuance of, ex parte orders for this purpose. We reject Cambron's arguments.
First, Cambron has "no general constitutional right to discovery" and certainly not one buoyed by secret assistance from the judiciary. Porter v. Commonwealth , 394 S.W.3d 382, 387 (Ky. 2011) (citing Weatherford v. Bursey , 429 U.S. 545, 97 S.Ct. 837, 51 L.Ed.2d 30 (1977) ). As stated in People In Interest of E.G. , 368 P.3d 946, 953 (Colo. 2016), wherein the defense sought a court order to access a crime scene in a private home-to which the owner did not consent-a defendant has "no broad constitutional right ... to access the court's power to conduct his own investigation."
In Washington [v. Texas , 388 U.S. 14, 19, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967) ], the Supreme Court applied the Compulsory Process Clause of the Sixth Amendment to the states and held that "[a]n accused ... has the right to present his own witnesses to establish a defense" because "[t]his right is a fundamental element of due process of law." 388 U.S. at 19, 87 S.Ct. 1920. However, Washington does not support the notion that the Compulsory Process Clause provides a tool by which a defendant can obtain investigatory access to private property. In fact, "[a]part from serving to secure witnesses and evidence for in-court presentation, the Compulsory Process Clause ... has never been found by the Court to guarantee access to evidence more generally." People v. Baltazar , 241 P.3d 941, 944 (Colo. 2010) (emphasis added) (citations omitted).
Id. at 951. The Compulsory Process Clause of the Sixth Amendment does not expressly authorize entry of an ex parte order to procure records-not one's own and not those of another. Cambron's reading is far too broad.
Second, a criminal defendant may independently pursue many avenues in his quest to acquire records without disclosing his actions to anyone. It is when he asks the trial court to help him that he must follow established court rules. A criminal defendant's right to due process is not limitless; it is no greater than that recognized in Brady v. Maryland , 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), which:
creates a rule of disclosure [in the context of a fair trial], not a constitutional right to discovery." See e.g., United States v. Bagley, 473 U.S. 667, 675 and n.7, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985) ("[S]uppression of evidence amounts to a constitutional violation only if it deprives the defendant of a fair trial ... An interpretation of Brady to create a broad, constitutionally required right of discovery would entirely alter the character and balance of our present systems of criminal justice.") (internal citations omitted).
Porter , 394 S.W.3d at 387 n.4.
Third, Cambron's citation to United States v. Tomison , 969 F.Supp. 587, 593 (E.D. Cal. 1997), is unpersuasive. Defendants in Tomison filed ex parte subpoenas duces tecum under FRCRP 9 17(c), asking the court to seal the motions and supporting documents to avoid revealing defense strategy to the prosecution. Similar to our case, the requested subpoenas in Tomison -as opposed to requests for ex parte orders in Cambron's case-required third parties to provide pre-trial production of *564 documents pertinent to the defense. The trial court obliged, authorizing issuance of the subpoenas and sealing them, prompting the government (and some recipients of the subpoenas) to move to quash the subpoenas.
Despite finding FRCRP 17(c) does not specifically address ex parte applications and is rife with ambiguities, Tomison held the rule allows a trial court to consider ex parte applications for pre-trial production of subpoenas duces tecum in limited circumstances. Id. at 595. Adopting the minority view, the lone federal district court judge in Tomison held FRCRP 17(c) permits filing an ex parte application when the defendant cannot make the "required showing without revealing trial strategy." Id. The "required showing" refers to United States v. Nixon , 418 U.S. 683, 699-700, 94 S.Ct. 3090, 3103-04, 41 L.Ed.2d 1039 (1974) (citing United States v. Iozia , 13 F.R.D. 335, 338 (S.D.N.Y. 1952) ), which explains:
to require production prior to trial, the moving party must show: (1) that the documents are evidentiary and relevant; (2) that they are not otherwise procurable reasonably in advance of trial by exercise of due diligence; (3) that the party cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial; and (4) that the application is made in good faith and is not intended as a general "fishing expedition."
(Internal footnote omitted). There is no indication Cambron established even one of the Nixon criteria during his secret conversations with the trial court, let alone all four.
Cambron urges us to follow Tomison because CR 7.02(3)"was taken verbatim" from FRCRP 17(c). House , 295 S.W.3d at 828. However, Cambron fails to mention FRCRP 17(c) was amended in 2008 in response to criminal defendants routinely seeking juvenile court and child protective services records of government witnesses in child sex trafficking cases. Margaret Garvin & Douglas E. Beloof Crime Victim Agency: Independent Lawyers for Sexual Assault Victims , 13 Ohio St. J. Crim. L. 67, 77-78 (2015). The defense habit became so prevalent under the federal rule, a subpoena is now required to access a victim's personal information and the victim must be notified of the request to enable the victim to move to quash or modify the subpoena. CR 7.02(3) bears little resemblance to FRCRP 17(c) as it reads today.
Without citing authority, Cambron maintains numerous federal courts consider ex parte applications for subpoenas duces tecum to procure third-party records when notice to the government would reveal possible trial strategy. His unsupported claim contradicts Tomison which readily acknowledges:
[w]hile various district court opinions address the problem, neither the parties, nor the court in its own research, have located any binding authority, or any circuit court decisions for that matter, on point. See United States v. Beckford, 964 F.Supp. 1010, 1025 & n. 16 (E.D. Va. 1997) (compiling cases addressing the question).
Tomison , 969 F.Supp. at 589. Furthermore, courts allowing the filing of ex parte applications for subpoenas duces tecum -in limited situations-usually impose hurdles. For example, some require a "showing of exceptional or difficult circumstances." State v. Russell , 897 N.W.2d 717, 727 (Iowa 2017). Colorado requires the party issuing the subpoena to serve a copy on opposing counsel, consistent with the rule's purpose, which is producing evidence, not investigating the case. Baltazar , 241 P.3d at 944. Even *565 United States v. Beckford , 964 F.Supp. 1010, 1026 (E.D. Va. 1997) -described as the "most liberal application" of FRCRP 17(c) -recognized the rule "suggests an adversarial process wherein the opposing party will be provided notice and an opportunity to challenge" issuance of a subpoena duces tecum. Id. Tomison represents a minority view we decline to follow.
There is another reason to reject Tomison's rationale. In Megibow v. Kentucky Bar Ass'n , 173 S.W.3d 618, 619-20 (Ky. 2005), an attorney was deemed to have violated rules of professional conduct prohibiting disobedience of court rules and proscribing false statements of material fact or law to a third person. SCR 3.130 -3.4(c); SCR 3.130 -4.1. The violation occurred when Megibow issued subpoenas to obtain documentary evidence without an accompanying notice of a deposition, hearing or trial in contravention of CR 45.01. In doling out a public reprimand, our Supreme Court wrote:
[t]he use of subpoenas to obtain documentary evidence or tangible things without an accompanying notice of deposition or notice of hearing or trial has been a recurring problem. Evidently some practitioners are unaware that CR 45.01 prohibits such use of subpoenas. As stated in the rule, "Subpoenas shall not be used for any purpose except to command the attendance of the witness and production of documentary or other tangible evidence at a deposition, hearing or trial." It is improper to use subpoenas in a manner contrary to the rule. We addressed a parallel issue in Stengel v. KBA [162 S.W.3d 914 (Ky. 2005) ] with respect to the use of Grand Jury subpoenas to obtain documents from out-of-state firms. We amended RCr 5.06 to permit the use of such subpoenas provided the instrument was not misleading. Stengel does not modify or undermine CR 45.01.
(Internal footnotes omitted). Under Megibow, Kentucky would not recognize an ex parte application for a subpoena duces tecum.
Fourth, Cambron uses the terms "order" and "ex parte order" interchangeably-as if they are the same. They are not equals and the distinction matters. Simultaneous with the filing of a motion seeking an order, notice is sent to opposing counsel and the matter may be set for a hearing. Upon entry of an order granting the motion, the order is distributed to all counsel and is entered into the record. In contrast, an ex parte motion is filed without notice to opposing counsel and may be granted in secret, without an opportunity for the opposing party to respond in writing or to be heard orally. The extreme number of ex parte orders entered in this case is a prime example of the important distinction in orders and ex parte orders. But for CACU's impromptu revelation to the Commonwealth, the prosecution would likely have never learned of the significant motion practice from which it was entirely excluded.
We pause to comment on CACU's role in this case. Upon receiving an order for records it considered to be out-of-the-ordinary, CACU mentioned the directive to the prosecution-an action for which the trial court chastised CACU because the order was "sealed." However, had CACU simply complied with the directive as expected-rather than alerting the prosecution-the trial court's habit of routinely acceding to cloak-and-dagger OLMPD requests would not have been exposed to the light of day. As recognized by Justice Louis D. Brandeis in a 1913 Harper's Weekly article, "sunlight is said to be the best of disinfectants[.]"
After all, defense counsel had-by its deceptive practice-developed a secret ally in the trial court and would not have willingly *566 jeopardized a procedure working in its favor. Similarly, the trial court endorsed and fully cooperated in the covert practice we deem reprehensible. Neither defense counsel nor the trial court would have exposed this clandestine and improper procedure. It is only because CACU-a third party-conscientiously and wisely revealed the action that we are able to explain its impropriety and forbid it.
A nagging question throughout this entire appeal is why Cambron immediately sought sealed ex parte orders rather than mere orders with notice to the prosecution. This is particularly curious because the Commonwealth had just tried Cambron on a charge of child sex abuse. In light of the recently concluded prosecution, the Commonwealth was already aware of Cambron's background. A request for a plain order may not have drawn any objection from the Commonwealth-but if there were reasonable grounds to object, the Commonwealth deserved the opportunity to do its job and argue its position. As the Commonwealth stated at oral argument, it has a dual role-to both seek justice and to protect the citizenry from unreasonable requests and unnecessary expenditure of public money. Without input from the prosecution, the trial court was left to base its decision on only one side of the story.
Just as Cambron confuses "orders" with "ex parte orders," he equates entry of an "ex parte order" with issuance of an "ex parte subpoena duces tecum. " Citing Commonwealth v. Barroso, 122 S.W.3d 554 (Ky. 2003), Cambron suggests the ex parte order under review was the equivalent of an ex parte subpoena duces tecum. Again, we disagree. Records in Barroso were provided to the trial court which conducted an in camera review. The records in this case were ordered to be provided directly to the defense team. The trial court wrote,
[t]he Court has not seen the material and has no need to know what is in there. Frankly, it would seem prudent not to see the material unless and until the defense concludes the material will in fact be something with arguable relevance so as to trigger an obligation to disclose it as part of reciprocal discovery.
In other words, the trial court placed all decision-making authority in defense counsel. The implication being the trial court did not care whether the documents Cambron sought were even relevant. As the Commonwealth notes in its reply brief, Cambron may not have even been entitled to the records since he sought them for pre-trial investigation, not introduction at trial. RCr 7.02(3) is not a discovery or investigatory device. House , 295 S.W.3d at 829.
The trial court's position is highly troubling. It is the equivalent of burying one's head in the sand and repeatedly placing all control in the hands of the defense, especially when it would have been so easy for the trial court to utilize in camera review. A better practice would have been for defense counsel to move for an order-giving notice to the Commonwealth with opportunity to be heard-requiring production of the records with delivery to the trial court. Following in camera inspection by the trial court, the records would then have been made available-in whole or in part-to both parties or, if appropriate in the trial court's view, to only the defense. This approach would have been entirely consistent with all court rules, including Canon 3(B)(7). Another avenue the defense could have taken was issuing a subpoena duces tecum , again with delivery to the trial court followed by in camera inspection by the court. These are but two avenues Cambron could have pursued. Suggesting his only option was an ex parte oral motion for entry of an ex parte order sealed from the Commonwealth's view is pure folly.
*567 To summarize, neither the Fifth, Sixth nor Fourteenth Amendments expressly authorize ex parte contact between a defense attorney and a trial court regarding a pending case. The Commonwealth must be advised of all such contact and given the opportunity to participate and to be heard. Thus, the first scenario mentioned in Canon 3(B)(7) is eliminated from our consideration.
Turning our focus to the Canon's second scenario, the trial court appears to have considered neither whether Cambron would gain a procedural or tactical advantage with the court's help, nor whether his request pertained to a substantive matter or an issue on the merits. Moreover, the trial court did nothing to notify the Commonwealth of the substance of the ex parte communication or give the prosecution the opportunity to be heard. The trial court violated the Canon in multiple ways.
That Jefferson County attorneys are once again seeking to expand use of ex parte communications with a judge-this time to procure production of records-is not surprising. In both Commonwealth v. Carman , 455 S.W.3d 916 (Ky. 2015) ("judges are prohibited from engaging in ex parte communications to change the conditions of a defendant's release after the initial fixing of bail, such practice being another clear violation of SCR 4.300, Canon 3(B)(7)"), and Commonwealth v. Wilson , 384 S.W.3d 113, 114 (Ky. 2012), abrogated by Carman (answer to whether Kentucky law authorizes ex parte motion by criminal defendant to vacate or set aside arrest warrant without Commonwealth receiving notice and opportunity to be heard is "unequivocal no"), the Supreme Court of Kentucky forbade what had become common practice in Jefferson County. This is at least the third such practice to be challenged in the appellate courts in recent memory. Like the striking down of practices in Carman and Wilson , the practice of indigent defendants immediately resorting to ex parte orders to procure discovery and then sealing them runs afoul of Canon 3(B)(7) and must cease. "[D]iscovery must be a two-way street." Wardius v. Oregon , 412 U.S. 470, 475, 93 S.Ct. 2208, 2212, 37 L.E.2d 82 (1973).
To be clear, we are not saying Cambron is not entitled to the records he seeks. We have no way of knowing whether he is entitled to the requested material. We simply do not have the details necessary to make such a pronouncement. Based on the record provided to us, it does not appear the trial court had the necessary facts either.
The arraignment order included a discovery provision citing JRP[10] 803 (titled "Discovery") and directing, "[t]he parties are expected to comply with this rule in all particulars." JRP 804(B)[11] specifically addresses "Ex Parte Requests" under "Pretrial [sic] Hearings," and is based directly on KRS 31.185(2). The arraignment order also specified RCr 5.16, 6.22, 7.24 and 7.26 are "applicable in this case." Thus, normal rules of discovery were available to Cambron and should have been used.
The Commonwealth filed discovery at least three separate times between *568 November 2014 and February 2015. Because Cambron did not decline discovery, he was to "produce reciprocal discovery" within ten days of receiving the Commonwealth's compliance. No discovery provided by the defense team appears in the appellate record. The trial court believed Cambron's "right" to not divulge his defense was paramount, apparently ignoring some defenses must be revealed in advance of trial, specifically the desired introduction of expert testimony about mental disease or defect or any other mental condition bearing on the accused's guilt or innocence. Terry v. Commonwealth , 332 S.W.3d 56, 59 (Ky. 2010). Trial "is not yet a poker game in which players enjoy an absolute right always to conceal their cards until played." Williams v. Florida , 399 U.S. 78, 82, 90 S.Ct. 1893, 1896, 26 L.Ed.2d 446 (1970).
The record before us is lacking in several respects and cannot support the trial court's resolution. The record fails to show Cambron's attorneys tried less drastic means before seeking ex parte orders in secret. For example, it does not appear they sent CACU a request for production of records that was ignored, nor that in the wake of non-compliance they moved to have CACU held in contempt. It does not appear Cambron's attorneys served CACU with a subpoena duces tecum under RCr 7.02(3) to which CACU did not respond, nor that in the wake of non-compliance, they sought to have CACU held in contempt of court under RCr 7.02(7). It also does not appear the defense team filed an open records request under KRS 61.872 and 61.878(1)(h). If time were of the essence-as suggested in the trial court's opinion and order-a response is required within three days under the Open Records Act and does not require disclosure to opposing counsel. As noted previously, the unanswered question throughout this appeal is why a simple order for production of records-rather than an ex parte order-was deemed inadequate and by whom? These are all basic questions untouched by the trial court in its opinion and order denying the Commonwealth's motion to quash.
The trial court attempted to justify entry of the ex parte order by emphasizing Cambron's right to remain silent. However, the records requested would come from a third party-not from Cambron himself. The Fifth Amendment privilege against self-incrimination prevents "compelled self-incrimination," Fisher v. United States, 425 U.S. 391, 401, 96 S.Ct. 1569, 1576, 48 L.Ed.2d 39 (1976) (internal citation omitted), not disclosure of "incriminating statements elicited from another." Doe v. United States , 487 U.S. 201, 206, 108 S.Ct. 2341, 2345, 101 L.Ed.2d 184 (1988). Requiring an accused to choose between complete silence and presenting a defense does not invade his right to remain silent. Williams , 399 U.S. at 84, 90 S.Ct. at 1897.
The trial court equated entry of an ex parte order for the defense with the Commonwealth's acquisition of post-indictment search warrants. However, the trial court failed to recognize any search warrant procured by the Commonwealth-along with its supporting affidavit, and any return on such a warrant-would be filed in the record and open to view. RCr 13.10. Cambron would have the opportunity to challenge any search warrant pertaining to his case, Franks v. Delaware , 438 U.S. 154, 155-56, 98 S.Ct. 2674, 2676, 57 L.E.2d 667 (1978), and to seek suppression of any evidence acquired. RCr 8.27. Unlike the wake of a post-indictment search warrant, records produced in response to the sealed ex parte orders in this case might never have been revealed to the Commonwealth.
While Cambron references KRS 31.185, that provision pertains only to ex parte requests for funds for items such as transcripts, *569 testing at a private facility when use of a state facility has been shown to be impractical, or contracting with an expert witness needed to mount the defense. Commonwealth v. Paisley , 201 S.W.3d 34 (Ky. 2006) ; McCracken County Fiscal Court v. Graves , 885 S.W.2d 307 (Ky. 1994). KRS 31.185 does not explicitly authorize ex parte motions or proceedings to obtain court orders for production of records. Moreover, motions pertaining to use of private facilities are not automatically to be made ex parte ; they are labelled ex parte only when defense counsel asks to be heard ex parte. See KRS 31.185(2).
For the reasons explained above, the order denying the Commonwealth's motion to quash and to disclose other ex parte documents is reversed and remanded to the Jefferson Circuit Court for further proceedings consistent with this Opinion.
ALL CONCUR.

We have opened all sealed envelopes and reviewed all contents-including thirty-two ex parte orders. Six of these orders were entered on November 6, 2014; four on November 21, 2014; two on January 12, 2015; six on March 12, 2015; twelve on April 2, 2015; one on June 17, 2015; and, one on December 9, 2015.
All but three of the orders mirror one another, differing only in the entity directed to provide records to the defense. The other three orders cite Kentucky Revised Statutes (KRS) 31.185(5) and involve funds.
The record contains one ex parte motion. It does not seek records, is signed by Cambron's trial attorneys, and was not served on the Commonwealth. This motion was granted by order entered on November 21, 2014-the same day three other ex parte orders were entered.

CACU is not a social service agency or healthcare provider. It is an investigatory arm of the Louisville Metro Police Department which investigated the murder with which Cambron is charged.

The Commonwealth has acknowledged some of its arguments are unpreserved. For those arguments, the Commonwealth has requested palpable error review which we grant. Kentucky Rules of Criminal Procedure (RCr) 10.26.

Rules of the (Kentucky) Supreme Court.

Person not compelled in criminal case to be witness against self.

Compulsory process to obtain favorable witnesses.

No deprivation of life, liberty or property absent due process of law.

Jefferson Rules of Practice. According to JRP 101, the JRP "supplement the Kentucky Rules of Civil Procedure and the Kentucky Rules of Criminal Procedure."

"Ex Parte Requests. Counsel for a person who is financially unable to pay for investigation, experts, the attendance of out-of-state witnesses, or other services reasonably necessary for the defense may request funds for those services in an ex parte, in camera application to the Judge and, upon such request, the Judge shall conduct the inquiry ex parte and in camera, on the record and with the record sealed." (Emphasis added).